Morning, Your Honors. My name is Michael Donahoe. I work for the Federal Defenders of Montana. I staff the Helena office. I was trial counsel in this case, and we bring three issues here today. First involves construction of the Major Crimes Act, 18 U.S.C. section 1153, and precisely whether or not attempted kidnapping is contained within the orbit of that statute, as indicted by the government in this case. We contend that it is not because it is not a specifically listed crime. Traditionally, the cases that have interpreted this statute from the Supreme Court and by this Court indicate squarely that that list is that list. They're all listed in your brief. I did, Your Honor. Just wanted to touch on it. Now, we have the complicating factor here that even though attempted kidnapping was acquitted on that charge, and we bring to the Court the prejudicial nature of allowing that to go forward, we contend in the brief that the trial would have been different, would have been otherwise handled maybe by the defense. We had to make a decision, Mr. Long Neck did, whether or not he was going to testify given the existence of the attempted kidnapping charge. He had to get up, at least in his mind, before that jury and tell the juries. Wasn't it just really all kind of together? I mean, it was one incident that it's true, as lawyers and judges, we break it down, but it was one incident, right? Well, it was one incident, but I think as the defense counsel, that was the challenge here, was to separate it out. Well, but are you saying that if the kidnapping hadn't been there, that he wouldn't have contested the rest of it? He just would have admitted to all of that? Well, I think that he Or he just would have not It just sort of seems that if he wants to contest that incident, he's got to make a decision one way or another how he's going to approach it. I'm having a hard time seeing how you just pull that out of there. Well, actually, Your Honor, I think that's kind of unfair. It's unfair for the government to charge something that they have no business charging in the first place and then take us to trial on it, make the guy incorporate that into his analysis of whether or not he's going to testify. So he has to get up before the jury and say, no, I didn't ever attempt to kidnap this woman. There was no question from the trial evidence that there was no kidnapping on the back end. There was no kidnapping on the back of this, this continuous event, as the Court describes it, as Your Honor describes it. But when you're talking prejudice, though, what are the worst parts of these facts? Because she had a whole bunch of injuries, right? She did that were sort of They know each other. They've had there was a longer ongoing saga between the two of them. No, no question about that. I'm struggling with how the kidnapping really was. And that if you believed what the state's case was, what was the kidnapping? Pulling her into the bathroom? Well, I guess now pulling her into the bathroom, I guess we did convince the jury by the testimony and from the government's evidence that he didn't do that. That there was no kidnapping on the front end, on the front end of the incident. And it did resolve itself, I'll agree with Your Honor, to whether or not there was a kidnapping around the bathroom incident. And that's what he got in the box to talk about, was that I never intended to take this woman from one place to another. I never intended to keep her in a place against her will. And he suffered because he had to get up and deny those things. And he suffered by the fact that his negligent homicide conviction came up. That was prejudicial. We got to spend less time as the defense on hammering home to the jury the fact that the injuries happened at different times. The woman's memory was not altogether maybe what it should have been. There had been a lot of drinking involved. Circumstances alter cases. And I think that given the way the case was presented to us by the government, we had to act in a set fashion and really couldn't deviate from that course. You take out the attempted kidnapping charge, we defend in maybe a little bit of a different style. And the government says, well, it's not prejudicial. And that's sort of mantra-like in their brief. But why do they get to charge something that we contend they should have never charged to begin with and then come in under the no harm paradigm and say no harm, no foul? The last issue we bring involves the Jackson instruction. The district judge in this case did instruct in one style. We requested specifically under this Court's decision in Jackson for an express direction to the jury that they could go right to the lesser included offense. Were they inclined to do so? The district judge rejected our instruction in favor of an oral instruction that we contend the jury would have been hard-pressed to figure out that they were entitled to go right to the lesser included. Here I would only point out in terms of the record the fact that the jury did send out a note fairly early in the deliberation wanting to know the difference between the two offenses, the lesser and the greater, at least in terms of definition. So they were looking at that subject. Whether or not they believed that they were entitled to go right ahead to the lesser, deliberate on that and compromise the greater offense in the process is anybody's guess. And I guess here I want to harp on the fact that this particular district judge does not give written instructions to the jury. It does not give them a copy. I think in all fairness to the government, if this jury has a copy of the district judge's instructions and reads them and is able to consider them in sort of a deliberate fashion, they can parse that out and they can figure out what the Jackson rule is and what their entitlements as a jury are. But that's not the case here. There was just an oral instruction to the jury. It's kind of wispy. And if they didn't get it on the first pass, they just don't get it. So that's where we are. Thank you. Good morning again, Your Honors. Josh Vandewetteren for the United States. With respect to whether or not kidnapping is included in the enumerated or, excuse me, attempted kidnapping is included in the enumerated offenses, of course, as we noted in our brief, we certainly believe that it is. Attempted kidnapping is a portion of the kidnapping statute under federal law. Section 1153, which enumerates the crimes, enumerates a number of crimes, which also include in their substances attempted kidnapping like arson and robbery both do also. And we believe it would be an unreasonable parsing of the statute to suggest that when Section 1153 says the following offenses shall be punishable, that you then parse out the various parts of that statute and say attempt or some other portion of the statute does not apply. The defendant in his brief makes an argument that the Congress clearly knows how to parse out the statutes because with respect to sexual offenses they simply cite an entire chapter. The United States would submit that's because there are, I think, four or five different separately defined and separate statutes for those sex offenses, which is why Congress simply wrapped them all up. By citing kidnapping, we would argue the wrap-up attempted kidnapping also. With respect to the retroactive misjoinder issue, I'm wondering in my mind if the government ever brings multiple charges and receives an acquittal on one of them, is there not a retroactive misjoinder argument? And it certainly happens more frequently than we would like. Of course, we lose certain counts. Well, counsel, for Mr. Longneck, as I understand the gist of his argument, is that he wouldn't have testified. His defense would have been different if the kidnapping charge had not been improperly joined. And I asked him about, well, how do you really separate that out? Isn't this just one instance? What's your response to the prejudice argument there? Well, our response is that it is just one big instance. It's all in the same day an ongoing dispute between these two people that happens at a variety of different places. And our response is the United States would have introduced all that evidence anyway to show this whole picture of this ongoing dispute on this day. So I don't think there's any evidence in the record or any reason really to believe that the defendant would not have taken the stand in his own defense. In fact, he spent most of his time countering the charges of assault and with respect to the kidnapping I think just said, I didn't do that. And obviously the jury believed him. Mr. Donahoe suggested that his challenge was to separate it out. And we would suggest that he did a very good job of separating it out based on what the verdict was. The jury apparently was able to separate it out, acquitted on the kidnapping and convicted on the other charge. With respect to the, and I would say, Your Honor, with respect to the government's theory of the kidnapping, and I think if you look at beginning on page 273 of the excerpts of record where Mr. Thager, the trial counsel for the government, is arguing that what Mr. Longneck did here to kidnap Ms. Kicking Woman was deceive her into coming with him, saying that I'm not going to give you a beating. Come on, let's go home. And then says that he is going to give her a beating. When they're in a dispute later on at the convenience store, he's again saying no, no, come on. The same sort of activity, trying to trick her into coming with him as a means of kidnapping. And the attempt, of course, is that he was not ultimately successful because he was arrested that day. With respect to the jury instruction, we would argue also that if it's defendant's proposed instruction, I think would have been just as wispy as the court's given instruction, since the court reads the instruction and does not provide a copy. There's no reason to believe that the court would have provided defendant's proffered instruction in a written form with the court either, and I don't think the defendant has challenged the district court's decision not to provide written instructions to the jury. The defendant argues in his reply brief that the issue boils down to whether or not the jury understood that they unanimously could conclude that he was not guilty of, or that they had to unanimously conclude he was not guilty of the greater offense before they could consider the lesser. And I would quote from defendant's excerpts records, page 310. Defendant's proffered instruction includes, in other words, it is not necessary for the jury to unanimously agree to acquit the defendant of assault resulting in serious bodily injury before considering guilt or innocence on the lesser included offense. The given instruction says if any of you are not convinced beyond a reasonable doubt that the defendant is guilty of assault resulting in serious bodily injury, and all of you are convinced beyond a reasonable doubt that the defendant is guilty of the lesser offense, you may find the defendant guilty of the lesser offense. It would seem to me that the court's given instruction is really stronger for the defendant than his proffered instruction. It says if any of you considers him not to be guilty, you may consider this other one. In other words, no requirement of unanimity of acquittal at all. So at the very best for the defendant, I think those instructions say essentially the same thing, and I would argue that even says it more strongly, at least the part that he's concerned about, is more strongly offered by the court's given instruction. So unless this Court has further questions. Thank you. I have no further questions, Your Honor. Thank you very much. We're going to take a five-minute break and be back here. All rise. This Court stands to recess for five minutes.
judges: Pregerson, Ferguson, Callahan